IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| UNDERSTANDING CORPORATION, | ) | Case No. 08-81398 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| THOMAS QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 09-9014 |
| v. | ) | |
| | ) | |
| UNDERSTANDING CORPORATION, | ) | |
| LARRY AMICK, LEW BROWN, and | ) | |
| GREG EVERETT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter came before the Court on October 6, 2009, upon the Motion to Amend Scheduling Order and for Temporary Stay and the Motion to Amend Complaint (the "Motions to Amend") filed by the Plaintiff Thomas Quinn ("Quinn") on September 9, 2009. The above-referenced debtor (the "Debtor") and Larry Amick, Lew Brown, and Greg Everett (the "Individual Defendants") filed separate objections (the "Objections") to the Motions to Amend. At the hearing, Mary F. Herndon appeared on behalf of Quinn, Jodi D. Hildebran appeared on behalf of the Debtor, and Lewis M. Everett appeared on behalf of the Individual Defendants. Upon consideration of the Motions, the Objections, the briefs filed in the case, the arguments of counsel, the relevant law, and the entire official file, the Motions to Amend will be denied.

## I.  JURISDICTION

1

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I), which this Court has the jurisdiction to hear and determine.

## II.  FACTS

The underlying actions in this case arise out of Quinn's employment with the Debtor, Understanding Corporation.  The Individual Defendants served, in some capacity, as management of the Debtor.  On April 1, 2006, the Debtor hired Quinn as its Chief Executive Officer.  Quinn and the Debtor executed an employment contract whereby Quinn agreed to serve as Chief Executive Officer through March 31, 2011.  Quinn served in that position through December of 2006, when he was removed from office.  Shortly thereafter, on January 12, 2007, the Debtor terminated Quinn.

Pursuant to an arbitration clause in the employment contract, on April 27, 2007, Quinn filed a request for arbitration with the American Arbitration Association.   In fear of dismissal for the Debtor's non-payment of arbitration fees, Quinn filed an action in Orange County Superior Court on November 16, 2007 against the Debtor, alleging breach of contract and violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1-25.25 (the "Wage and Hour Act").  On January 7, 2008, the Arbitrator entered an Order terminating the matter for non-payment of deposits.

During discovery in the state court action, the Debtor failed to respond to some of Quinn's discovery requests.  On September 2, 2008, the Superior Court judge entered an order

compelling the Debtor to respond to Quinn's discovery requests and allowing Quinn to amend his complaint to add the Individual Defendants.  Rather than comply with the order, on September 23, 2008, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code.  On February 10, 2009, the Individual Defendants filed a joint motion to dismiss in the state court action pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  The Individual Defendants relied on the North Carolina Court of Appeals decision in <u>Sawyer v. Market America</u>, 661 S.E.2d 750 (N.C. Ct. App. 2008), contending that Quinn was not protected by the Wage and Hour Act because he was not a resident of North Carolina.  On February 28, 2009, the motion to dismiss was denied.  Subsequently, Quinn dismissed the case in order to file an adversary proceeding in this Court.

On March 26, 2009, Quinn filed this adversary proceeding alleging breach of contract by the Debtor, violation of the Wage and Hour Act by the Debtor and the Individual Defendants, and that the debt owed to Quinn by the Debtor is nondischargeable under Section 523(a)(6) of the Bankruptcy Code.  The Debtor and the Individual Defendants timely filed their answers.  As in the state court action, the Individual Defendants relied on <u>Sawyer</u> to support their defense that Quinn is not a protected person under the Wage and Hour Act.

On May 27, 2009, the Court entered a Scheduling Order, which set June 15, 2009 as the last day to file motions to amend and July 30, 2009 as the date within which discovery must be completed.  No party elected to file a motion to amend by the June 15, 2009 deadline.

On June 16, 2009, the North Carolina Court of Appeals rendered its decision in <u>Panos v. Timco Engine Ctr., Inc.</u>, 677 S.E.2d 868 (N.C. Ct. App. 2009).  The court in <u>Panos</u>, relying on its prior decision in <u>Sawyer</u>, held that the Wage and Hour Act was not available to a nonresident

who worked primarily outside the State, despite daily communication with co-workers in the State. On July 30, 2009, the discovery deadline passed. After discovery was completed, both the Debtor and the Individual Defendants filed motions for partial summary judgment, seeking dismissal of Quinn's Wage and Hour Act claim. On September 1, 2009, Quinn sought an extension of time to file responses to the motions for summary judgment, which was granted.

On September 9, 2009, Quinn filed the Motions to Amend that are currently before this Court. Quinn seeks to amend the Scheduling Order to allow him additional time to amend his complaint. Quinn wishes to amend his complaint to add a claim against the Debtor and Individual Defendants under the Pennsylvania Wage Payment and Collection Law, 42 Pa. Stat. § 260.1-260.12.

### III. DISCUSSION

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Rule 15(a) provides:

> (1) A party may amend the party's pleading once as a matter of course:
>
> (A) before being served with a responsive pleading; or
>
> (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.
>
> (2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). An amendment to a complaint pursuant to Rule 15(a) should be allowed when it does no more than state an alternative theory for recovery. Foman v. Davis, 371 U.S. 178, 182 (1962). Rule 15(a) explicitly states that a court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a); see Foman, 371 U.S. at 182; Matrix Capital Mgmt.

Fund, LP v. Bearingpoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009); In re Md. Property Assocs., Inc., 309 Fed. Appx. 737, 753 (4th Cir. 2009); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008); Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).  However, a court may deny leave to amend for numerous reasons, including undue delay, bad faith or a dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or the futility of the amendment.  Foman, 371 U.S. at 182; Matrix Capital, 576 F.3d at 193; Sherman, 532 F.3d at 715; Edwards, 178 F.3d at 242; Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 590 F. Supp. 2d 1093, 1098 (N.D. Iowa 2008); Costello v. Univ. of N.C. at Greensboro, 394 F. Supp. 2d 752, 756 (M.D.N.C. 2005); Googerdy v. N.C. Agr. and Tech. State Univ., 386 F. Sup. 2d 618, 623 (M.D.N.C. 2005); Dewitt v. Hutchins, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004).

     Rule 16(b) of the Federal Rules of Civil Procedure governs scheduling orders.  Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b).  The Fourth Circuit has noted the tension existing between Rule 15(a) and Rule 16(b).  Nourison, 535 F.3d at 298.  The Fourth Circuit resolved this tension by declaring that once the deadlines in the scheduling order have passed, Rule 16(b) controls.  Id. Given their heavy case loads, federal courts require the effective case management tools provided by Rule 16.  Id.  The Nourison court refused to read Rule 16(b) in light of Rule 15(a)'s liberal allowances.  Id. at 299.  Therefore, after the deadline for the scheduling order has passed, the movant must meet the good cause standard of Rule 16(b) to justify leave to amend.  Id. at 298; Sherman, 532 F.3d at 716; Leary v. Daeschner, 349 F.3d 888, 906-07, 909 (6th Cir. 2003);

Transamerica, 590 F. Supp. 2d at 1098; Siesta Village Market, LLC v. Perry, 530 F. Supp. 2d 848, 860 (N.D. Tex. 2008); United States v. Godwin, 247 F.R.D. 503, 505 (E.D.N.C. 2007); Dewitt v. Hutchins, 309 F. Supp. 2d at 748; Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 460 (M.D.N.C. 2003); Rassoull v. Maximus, Inc., 209 F.R.D. 372, 373 (D. Md. 2002). If "good cause" is found to exist, then the court should analyze the motion under the Rule 15(a) standard. Godwin, 247 F.R.D. at 506.

In considering an untimely motion to amend under Rule 16(b), a court should consider four factors: (1) the reason for the untimeliness; (2) the importance of the amendment; (3) the potential for prejudice; and (4) the ability to cure such prejudice. Siesta Vill. Mkt., 530 F. Supp. 2d at 860-61. The primary measure of good cause under Rule 16(b) is the movant's diligence in attempting to meet the requirements of the scheduling order. Sherman, 532 F.3d at 716; Leary, 349 F.3d at 906; Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002); Transamerica, 590 F. Supp. 2d at 1099; Godwin, 247 F.R.D. at 506; Dewitt, 309 F. Supp. 2d at 748; Interstate Narrow Fabrics, 218 F.R.D. at 460; Rassoull, 209 F.R.D. at 374. The movant must demonstrate that despite his diligence he could not meet the original deadline or offer the amendment sooner. Leary, 349 F.3d at 907; Transamerica, 590 F. Supp. 2d at 1099; 1100; Godwin, 247 F.R.D. at 506.

In this case, Quinn has not shown that, despite his diligence, the belated amendments could not reasonably have been offered sooner. In Nourison, the Fourth Circuit affirmed the district court's finding that the defendant did not show good cause when it filed a motion to amend 57 days after the deadline to amend pleadings and 31 days after the plaintiff filed its motion for summary judgment. 535 F.3d at 297-98. In that case, the defendant's justification

6

for the late amendment was an inadvertent failure to raise a defense sooner.  Id.  The Panos decision, which Quinn relies upon to excuse his belated amendment, was issued by the North Carolina Court of Appeals on June 16, 2009, one day after the deadline to amend.  Quinn moved to amend his complaint 86 days after the deadline to amend pleadings, 85 days after the Panos decision was rendered, 41 days after the close of discovery, and 26 days after the first motion for summary judgment was filed.

When the information supporting the proposed amendment is available to the movant before the amendment deadline, it does not support a finding of good cause.  Interstate Narrow Fabrics, 218 F.R.D. at 460.  Quinn admits that the new claim under the Pennsylvania Wage Payment and Collection Law is based on the same facts as the Wage and Hour Act claim, and that these facts were readily available prior to the deadline to amend.  Quinn explained that he operated under the assumption that only the Wage and Hour Act applied, making a conscious decision not to assert the additional claim.  Such an explanation is essentially a concession that Quinn did not explore the additional theory for recovery in a timely manner.  See Sherman, 532 F.3d at 717-18 (holding that a determination of the merits of an affirmative defense at the close of discovery and during research and preparation for summary judgment does not show proper diligence).

In support of Quinn's motion to amend the scheduling order, he asserts that good cause exists due to a change in the law.  Quinn argues that the Panos decision changed the law as to the application of the Wage and Hour Act.  The Court is unpersuaded by Quinn's strained reading of the Panos decision.

In Sawyer, the North Carolina Court of Appeals was faced with the issue of whether an

Oregon resident who worked outside North Carolina can bring a claim against a North Carolina corporation under the Wage and Hour Act. 661 S.E.2d at 752. Relying on the plain language of the statute, which indicates that the law is for the benefit of North Carolina residents, the court held that the Wage and Hour Act does not apply to the wage payment claims of a nonresident who neither lives nor works in North Carolina. Id. at 753. The court explained that the purpose of the statute is "to safeguard the hours worked by and the wages paid to the people of the State without jeopardizing the competitive position of North Carolina business and industry." Id. (quoting Horack v. S. Real Estate Co. of Charlotte, Inc., 563 S.E.2d 47, 52 (N.C. Ct. App. 2002)). Therefore, nonresidents are not covered under the Wage and Hour Act.

In Panos, the North Carolina Court of Appeals addressed the same issue with a "nearly indistinguishable" set of facts. 677 S.E.2d at 874. The plaintiff, a nonresident who worked primarily in Michigan and spent, at most, eighteen days per year working within North Carolina, brought an action alleging a violation of the Wage and Hour Act. Id. The only difference between Sawyer and Panos was the fact that the plaintiff in Panos participated in an almost daily conference call with management in North Carolina and attended quarterly management meetings in North Carolina. Id. The Panos court held that a daily phone call was insufficient to bring the plaintiff withing the protection of the Wage and Hour Act. Id. The Panos court went out of its way to note that Sawyer placed special emphasis on the trial court's ruling that it did not appear that Sawyer never worked in North Carolina, but rather that Sawyer rarely worked in North Carolina. Id.

This Court concludes that Panos did not change the rule in Sawyer that the Wage and Hour Act is inapplicable to nonresidents who neither live nor work in North Carolina. Panos

applied the same rule to a slightly different set of facts, namely whether frequent calls to an office in North Carolina and limited visits to North Carolina were enough to allow a nonresident to assert claims under the Wage and Hour Act. Quinn asserts that Panos changed the standard with regard to nonresidents who work limited amounts in North Carolina, but the Panos opinion specifically noted that the Sawyer decision placed special emphasis on the lower court's ruling that Sawyer rarely worked in North Carolina. The Panos court chose to clarify its prior ruling in Sawyer, rather than "make a new test out of whole cloth." Transamerica, 590 F. Supp. 2d at 1103-04 (rejecting the argument that a decision, clarifying which one of several tests previously applied should apply going forward, constituted a change in the law excusing a belated amendment). The Panos decision does not effect a change in the law sufficient to show good cause under Rule 16(b). Cf. Siesta Vill. Mkt., 530 F. Supp. 2d at 860-61 (finding good cause based upon a change in the law where the state changed four months after the deadline for seeking leave to amend pleadings and the determination of the constitutionality of the amended statute was vitally important to the case).

     In addition to the diligence of the movant, prejudice to the nonmovant is also a factor in determining good cause under Rule 16(b). Sherman, 532 F.3d at 717; Leary, 349 F.3d at 906; Inge, 281 F.3d at 625. Some courts will not consider prejudice to the nonmovant unless the movant has been diligent. Sherman, 532 F.3d at 717; Transamerica, 590 F. Supp. 2d at 1099. Despite Quinn's lack of diligence, it is noteworthy that the Debtor and the Individual Defendants would be prejudiced if the Motions to Amend were granted. A nonmovant can show prejudice by the fact that discovery would have to be reopened if the amendment was allowed. Leary, 349 F.3d at 908-909. In this case, Quinn had 44 days between the issuance of the Panos decision and

the close of discovery to file the Motions to Amend. Yet, Quinn waited until well after discovery was complete and motions for summary judgment were filed. If this Court were to grant the Motions to Amend, the Debtor and the Individual Defendants would be justified in requesting further discovery. The Debtor and the Individual Defendants would also incur additional costs of litigating the new claim, filing new pleadings, and researching the merits of the new cause of action.

## IV. CONCLUSION

Based on the facts and circumstances of this case, the Court concludes that Quinn has not shown good cause under Rule 16(b) to modify the scheduling order. Because Quinn has not met the threshold requirement of Rule 16(b), there is no need to conduct a Rule 15(a) analysis. Therefore, both the Motion to Amend Scheduling Order and for Temporary Stay and the Motion to Amend Complaint are denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| UNDERSTANDING CORPORATION, | ) | Case No. 08-81398 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |
| THOMAS QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 09-9014 |
| v. | ) | |
| | ) | |
| UNDERSTANDING CORPORATION, | ) | |
| LARRY AMICK, LEW BROWN, and | ) | |
| GREG EVERETT, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

PARTIES IN INTEREST

Thomas Quinn

Mary F. Herndon, Esq.

Understanding Corporation

Jodi D. Hildebran, Esq.

Larry Amick

Lew Brown

Greg Everett

Lewis M. Everett, Esq.

11